1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JERRY RICHARD,

          Plaintiff,

     v.

NORTHWEST PIPE COMPANY, *et al.*,

          Defendants.

Case No.  C9-5724RBL

ORDER DENYING MOTIONS
TO DISMISS [Dkt. #41, 43, 44]

THIS MATTER comes before the Court on Motions to Dismiss filed by defendants Northwest Pipe Company, its former Chief Executive Officer Brian Dunham, and its former Senior Vice President of Finance and Chief Financial Officer Stephanie Welty (collectively, "defendants"). [Dkt. #41, 43, 44]. Plaintiffs,[1] who are suing on behalf of themselves and all others similarly situated, assert that for years, defendants committed accounting improprieties that caused the company to overstate its earnings, in violation of federal securities laws. Plaintiffs allege that when the truth emerged, the stock price fell, damaging all stockholders.

For the reasons set forth below, the Court denies the Motions to Dismiss.[2]

---

[1] The Court previously consolidated two actions and granted an unopposed motion to appoint as lead plaintiff Plumbers and Pipefitters Local No. 630 Pension-Annuity Trust Fund.

[2] Because this matter can be resolved based on the parties' submissions and the balance of the record, plaintiffs' request for oral argument is denied.

**I. FACTS**

This is a federal securities class action brought on behalf of all persons who purchased or otherwise acquired the common stock of Northwest Pipe Company ("Northwest" or the "company") from April 2, 2007 through March 30, 2010 (the "class period").  Northwest is a manufacturer of large-diameter, high-pressure steel pipeline systems for use in water infrastructure applications, primarily related to drinking water systems.  [Consolidated Complaint, Dkt. #29, at ¶ 3].  Plaintiffs allege that during the class period, defendants engaged in numerous accounting improprieties which inflated the company's financial results, violated Generally Accepted Accounting Principles ("GAAP") and SEC disclosure rules, and made contradictory representations.  [*Id.* at ¶ 4].

On November 4, 2010, the company announced the completion of its year-long investigation, which resulted in a financial restatement of three years of financial results. [Consolidated Complaint at ¶ 50].  Plaintiffs allege, "When defendants' fraud was exposed, the Company was forced to issue a massive financial restatement which wiped out the Company's entire reported earnings for certain accounting periods, resulting in up to 77% overstatements in gross profit, 152% overstatements of net income, and 154% overstatements of EPS." [*Id.*].  The complaint alleges that defendants committed fourteen separate accounting violations, including improperly recognizing steel as revenue when it was purchased, artificially inflating revenue and earnings by concealing liabilities caused by contractual penalty provisions, liquidated damages and back charges, manipulating expenses related to depreciation of assets, and falsifying the assignment of costs.

Plaintiffs filed this lawsuit on November 20, 2009 alleging that defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Securities Exchange Commission ("SEC") Rule 10b-5.  The consolidated complaint also contends that the individual defendants are "control persons" subject to liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

## II.  DISCUSSION

**A.    Dismissal Standard**

Defendants have filed a 12(b)(6) motion for failure to state a claim upon which relief can be granted.  The complaint should be liberally construed in favor of the plaintiff and its factual allegations taken as true.  *See, e.g.*, *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992).  The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal citation and quotation omitted).  A complaint must include enough facts to state a claim for relief that is "plausible on its face" and to "raise a right to relief above the speculative level." *Id.* at 555.  The complaint need not include detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." *Id.*  A claim is facially plausible when plaintiff has alleged enough factual content for the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

**B.    Loss Causation**

"Loss causation is the causal connection between a defendant's material misrepresentation and a plaintiff's loss." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010).  Plaintiff bears the burden of proving that defendant's unlawful act "'caused the loss for which the plaintiff seeks to recover damages.'" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting 15 U.S.C. § 78u-4(b)(4)).

The Supreme Court has explained that liability attaches for the loss the purchaser sustains "after the truth became known" regarding defendant's material misrepresentation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005).  To survive a motion to dismiss, a plaintiff need only provide "some indication of the loss and the causal connection [plaintiff] has in

1  mind." *Id.* at 346-47 (explaining that the pleading rules for loss causation were "not meant to

2  impose a great burden upon a plaintiff" and that plaintiffs must only plead a "short and plain

3  statement" pursuant to Fed. R. Civ. P. 8).  Based on *Dura*, the Ninth Circuit has explained that

4  the issue of loss causation should not be decided on a Rule 12(b)(6) motion to dismiss if the

5  "complaint alleges facts that, if taken as true, plausibly establish loss causation."  *Gilead*, 536

6  F.3d at 1057.

7       [L]oss causation is not adequately pled unless a plaintiff alleges that the market learned of
        and reacted to the practices the plaintiff contends are fraudulent, as opposed to merely
8       reports of the defendant's poor financial health generally.  The market need not know at
        the time that the practices in question constitute a 'fraud,' nor label them 'fraudulent,' but
9       in order to establish loss causation, the market must learn of and react to those particular
        practices themselves.  This reaction, in turn, must be the cause of a plaintiff's loss.

10 *In re Oracle*, 627 F.3d at 392 (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d

11 1049, 1063 (9th Cir. 2008)).

12      In this case, the price of the company's stock went up when the company announced in

13 July 2010 that it would likely restate earlier financial results, and went up again in November

14 2010 when the company issued that restatement.  Faced with that reality, plaintiffs allege that

15 three other company disclosures triggered the losses.  First, on November 12, 2009, the company

16 reported that financial results for 3Q09 were less than analysts were expecting, and that the

17 Company could not timely file its 3Q09 Form 10-Q, due to a pending internal investigation

18 regarding certain "revenue recognition" practices.  [Consolidated Complaint at ¶¶ 178-79].

19 Following that disclosure, the company's stock price declined 14% and an analyst opined, "As a

20 result of the ongoing investigation and uncertainty regarding previously stated results, we lack

21 conviction on the future earnings power of the business pending additional information from the

22 company."  *Id.* at ¶ 181.  Second, the Complaint alleges that on March 16, 2010, the company

23 announced that it would not file its 2009 Form 10-K on time because the internal investigation

24 had not been completed; the company also disclosed that the SEC had commenced a formal

25 investigation.  [Consolidated Complaint at ¶¶ 15, 182].  The stock price declined 16.2%.  *Id.* at

26 ¶ 183.  Again, an analyst commented on the "uncertainty" of the situation.  The analyst noted,

27

28                                        ORDER - 4

"The lack of clarity on business conditions for the water transmission business coupled with uncertainty regarding the outcome and timing of completion of the internal accounting review makes it difficult for us to advocate committing new money into the shares."    [*Id.* at ¶ 184].

Third, plaintiffs allege that the market reacted negatively to Dunham's resignation, disclosed on April 2, 2010.  Faced with the fact that the stock price dropped before the announcement, plaintiffs contend that the resignation was leaked.  That allegation, however, is absent from the Complaint.

However, regarding the first two disclosures, courts have held that the disclosure of an internal investigation is sufficient to plead loss causation.  *See, e.g.*, *Rudolph v. UTStarcom*, 2008 U.S. Dist. LEXIS 63990 at *9-12 (N.D. Cal. Aug. 21, 2008); *In re New Century*, 588 F. Supp. 2d 1206, 1237 (C.D. Cal. 2008).  Moreover, courts have held that the disclosure of SEC investigations is sufficient to allege loss causation.  *See, e.g.*, *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 203 (S.D.N.Y. 2010); *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 485-86 (S.D.N.Y. 2008); *In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828 (D.N.J. 2006).  In contrast, in *Metzler*, the disclosures simply revealed negative financial information and a seemingly isolated problem at one campus.  Neither statement "disclosed – or even suggested – to the market that [defendant] was manipulating student enrollment figures company-wide in order to procure excess federal funding."  *Metzler*, 540 F.3d at 1063.

The truth need not be disclosed through a single, complete disclosure.  *See, e.g.*, *Dura*, 544 U.S. at 342 (explaining that the loss causation element was met where the price dropped after "the relevant truth began to leak out."); *In re Daou Sys.*, 411 F.3d 1006, 1026-27 (9th Cir. 2005).  In this case, the disclosures that required filings would be delayed and that the company and SEC were investigating revenue recognition practices – the subject of the alleged fraud – are sufficiently linked to defendants' prior statements about the company's financial results and are sufficient to plausibly allege loss causation.

**C.    Scienter**

To adequately plead scienter, a complaint must "state with particularity facts giving rise

1    to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-

2    4(b)(2)(A).  "A complaint can plead scienter by raising a strong inference that the defendant

3    possessed actual knowledge or acted with deliberate recklessness."  *Zucco Partners, LLC v.*

4    *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  A securities fraud complaint will survive a

5    motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and

6    at least as compelling as any opposing inference one could draw from the facts alleged."

7    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Therefore, the Court

8    considers the Complaint in its entirety.  *Id.* at 322.

9           Certainly, plaintiffs have not alleged any direct evidence of scienter such as an

10   incriminating statement from either of the individual defendants.  Nor are the alleged statements

11   from the anonymous witnesses compelling because, for the most part, the Complaint fails to

12   allege how the witnesses "would possess the information alleged" and to provide "adequate

13   corroborating details."[3]  *Daou*, 411 F.3d at 1015-16.

14          The Court also considers whether the allegations, when taken together, are sufficient.  *See*

15   *Tellabs*, 551 U.S. at 322-23.  Although the misapplication of GAAP standards is insufficient

16   alone to support a finding of scienter, the misapplication "'combined with a drastic

17   overstatement of financial results can give rise to a strong inference of scienter . . . [and] the

18   totality and magnitude of the accounting violations [may] constitute strong circumstantial

19   evidence of reckless or conscious misbehavior.'"  *New Mexico State Inv. Council v. Ernst &*

20   *Young LLP*, 641 F.3d 1089 (9th Cir. 2011) (quoting *Carley Capital Group v. Deloitte & Touche*,

21   27 F. Supp. 2d 1324, 1339-40 (N.D. Ga. 1998)).  In this case, the restatement was significant:

22   the company restated three years of financial statements, including significantly revising net

23   income figures, retained earnings figures, and earnings per share results.   [Consolidated

24   Complaint at ¶¶ 50, 62, 65, 89, 126-42, 155].  Plaintiffs have also alleged fourteen accounting

25

26          [3] For example, plaintiffs contend that CW4 states that Dunham had "final authority" for
27   approving settlements of claims, but fails to allege background facts to support that witness's
     alleged knowledge.

28                                            ORDER - 6

violations.  Although defendants attempt to explain them away, their explanations introduce evidence outside the record and not properly considered on a motion to dismiss.  Similarly, to counter plaintiffs' contention that the accounting principles defendants allegedly violated were simple, defendants have attempted to introduce declarations and information about audits, which is beyond the scope of this motion.[4]

In addition, defendants each made an inconsistent statement about the company's revenue recognition practices.  During an analyst call in July 2008, Dunham stated that the "shipment date is not really the driver" of when POC revenue was recognized; "[i]t's when it's built that's the driver."  [Consolidated Complaint at ¶ 82].  Similarly, Welty stated that "we recognize revenue as the work is completed."  [*Id.* at ¶¶ 82-83].  Clearly, those statements are inconsistent with the company's revenue recognition practices and with defendants' argument that their practices were open and notorious.  Although defendants attempt to explain away the issue, their explanation is unsupported by any citation or evidence appropriately considered in this motion.  Defendants' Reply at p. 11 n.9.  Moreover, plaintiffs convincingly argues that defendants, who were both CPAs and had extensive accounting experience, should have known of the falsity of their statements.

Additional factors suggest scienter.  First, plaintiffs have alleged a motive: absent the accounting violations, the company "would have missed Wall Street expectations, which would have devastated the stock price."  [Consolidated Complaint at ¶ 156 (citing examples)].  Similarly, plaintiffs allege that "[p]erformance-based incentive compensation made up a significant portion of defendants' compensation. . . .  Awards were based on achievement of certain financial performance measures for the year, including sales and **net incomes measures**."  *Id.* at ¶ 159 (emphasis in original); *see also Tellabs*, 551 U.S. at 325 (explaining that "personal financial gain may weigh heavily in favor of a scienter inference").  In turn, net

---

[4] In contrast, in *Zucco*, 552 F.3d at 987, on which defendants rely, it appears that plaintiffs did not contest the complexity of the accounting rules at issue.

income was significantly overstated.  During the relevant years, defendants Dunham and Welty received significant sums in incentive compensation, sometimes in excess of their base salary. *Id.* at ¶ 160; *see also No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003).

Second, both individual defendants certified pursuant to the Sarbanes-Oxley Act of 2002 that after review, the company's financial results were "fairly present[ed] in all material respects."  Plaintiffs' Response at p. 36.  The certifications, though insufficient alone, are "probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008).  Third, the timing and circumstances surrounding the individual defendants' departure from the company support an inference of scienter.  Welty resigned on January 20, 2011, shortly after the restatement was issued.  Dunham abruptly resigned his position as CEO during the pendency of the company's internal investigation.   [Consolidated Complaint at ¶ 165].  He subsequently resigned as President and as a member of the board of directors less than a month before the company issued the restatement. *Id.* at ¶ 166.  Standing alone, the departures are insufficient.  "But because the changes in management occurred while [the company] was preparing its own internal investigation of revenue recognition practices, the departures 'add one more piece to the scienter puzzle.'" *Fouad v. Isilon Sys.*, 2008 U.S. Dist. LEXIS 105870 at *31-32 (W.D. Wash. Dec. 29, 2008) (quoting *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887 at *14 (N.D. Cal. April 2, 2002)); *see also In re Impax Labs., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 52356 at *26-27 (N.D. Cal. July 18, 2007). Similarly, Dunham's departure was suspicious because the company had previously touted him as essential.  [Consolidated Complaint at ¶ 165]; *see also Zucco Partners*, 552 F.3d at 1002 (explaining that a resignation that was "accompanied by suspicious circumstances" could be sufficient to support an "inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations.").  In sum, taken together, plaintiffs' allegations meet their burden.

**D.      Control Person Liability**

Plaintiffs contend that the individual defendants are liable as "controlling persons" under the Securities Exchange Act of 1934 §20(a).  To prove a prima facie case under that section, plaintiffs must establish: (1) a primary violation of federal securities law; and (2) the defendant exercised actual power or control over the primary violator.  *See, e.g.*, *Am. West*, 320 F.3d at 945.

As an initial matter, because Welty began working for the company seven months into the class period, she could not have controlled anything prior to that time.  Any control person theory against her based on events that occurred prior to when she joined the company is untenable.

The statute provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  Welty argues that she was not a controlling person because plaintiffs have not alleged how she controlled Dunham, her boss.  However, if the company is alleged to be a violator, as it is in this case, alleging control over the company can be sufficient.  *See, e.g.*, *Am. West*, 320 F.3d at 945-46.  Furthermore, the Complaint alleges that Welty and Dunham were control persons because of the nature of their positions, the fact that they both participated in the day-to-day affairs of the company, and they had the power to control the company's financial disclosures, including the ones alleged to be false.  [Consolidated Complaint at ¶¶ 28, 206-08].  Accordingly, plaintiffs have sufficiently alleged that Welty and Dunham were "control persons."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  CONCLUSION

For all of the foregoing reasons, the Court DENIES defendants' Motions to Dismiss (Dkt. #41, 43, 44).

**IT IS SO ORDERED.**

Dated this 26th day of August, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER - 10