THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWEST PIPE COMPANY, et al.,<br><br>Defendants. | No. 3:09-cv-05724-RBL<br><br><u>CLASS ACTION</u><br><br>MOTION AND MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS<br><br>NOTE ON MOTION CALENDAR: FRIDAY, MARCH 22, 2013<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL)

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

## TABLE OF CONTENTS

Page

I. FACTUAL BACKGROUND ..... 3

II. OVERVIEW OF THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ..... 3

III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..... 5

A. The Strength of Lead Plaintiff's Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement ..... 5

B. The Risks of Proving Liability ..... 6

C. The Risks of Proving Damages ..... 7

D. The Recommendations of Experienced Counsel Heavily Favor Approval of the Settlement ..... 8

E. The Parties Have Engaged in Sufficient Pretrial Discovery and Proceedings to Identify the Strengths and Weaknesses of Their Cases ..... 9

F. Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Trial Favors Settlement ..... 10

G. The Plan of Allocation Is Fair and Reasonable ..... 11

IV. CONCLUSION ..... 12

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - i -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

# TABLE OF AUTHORITIES

Page

**CASES**

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978) .......... 11

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) .......... 8, 9, 10

*Bullock v. Adm'r of Estate of Kircher*,
84 F.R.D. 1 (D.N.J. 1979) .......... 10

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 11

*Create-A-Card, Inc. v. Intuit, Inc.*,
No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989
(N.D. Cal. Sept. 22, 2009) .......... 4

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... 7

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980),
*aff'd*, 661 F.2d 939 (9th Cir. 1981) .......... 4, 9

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......... 9, 10

*Goldman v. Standard Ins. Co.*,
341 F.3d 1023 (9th Cir. 2003) .......... 8

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .......... 7

*In re Cellcyte Genetics Sec. Litig.*,
No. C08-0047 RSL, 2009 U.S. Dist. LEXIS 87828
(W.D. Wash. Sept. 24, 2009) .......... 5

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) .......... 11

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) .......... 11

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - ii -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

Page

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) .......... 5, 11

*In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454 (9th Cir. 2000) .......... 5, 9, 10

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......... 5

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .......... 9

*Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627 (N.D. Ill. Sept. 21, 2000) .......... 8

*M. Berenson Co. v. Faneuil Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) .......... 9

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .......... 3

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984) .......... 10

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799 (9th Cir. 1986) .......... 3

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 5

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 3, 4, 10, 11

*Richard v. Northwest Pipe Co.*, No. C9-5724 RBL, 2011 U.S. Dist. LEXIS 96200 (W.D. Wash. Aug. 26, 2011) .......... 6

*Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) .......... 5

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - iii -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

**Page**

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .......... 4

*Util. Reform Project v. Bonneville Power Admin.*,
869 F.2d 437 (9th Cir. 1989) .......... 3

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) .......... 3

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) .......... 3, 9

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993) .......... 11

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) .......... 3

*Young v. Katz*,
447 F.2d 431 (5th Cir. 1971) .......... 10

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 .......... 1, 11
Rule 23(e) .......... 3

**SECONDARY AUTHORITY**

*Manual for Complex Litigation* (3d ed. 1995)
§30.42 .......... 9

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - iv -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff submits this memorandum in support of: (1) final approval of the settlement of this Litigation on the terms and conditions set forth in the Stipulation of Settlement dated as of September 24, 2012 (the "Stipulation") (Dkt. # 85);[1] and (2) the Plan of Allocation of settlement proceeds. Lead Counsel, through their extensive work and effort, obtained a cash settlement of $12,500,000 to settle this Litigation for the benefit of the Class.[2]

The settlement of this Litigation is a very good achievement for the Class in light of the circumstances and reflects the substantial efforts of Lead Counsel who litigated this case.[3] Since the commencement of this Litigation in November 2009, Lead Counsel have, among other things, (1) reviewed and analyzed voluminous public documents, including Northwest Pipe Company ("Northwest") press releases, reports Northwest filed with the SEC, financial reports, analysts' reports, and other media reports concerning Northwest; (2) with the assistance of investigators, located and interviewed numerous potential witnesses, including former Northwest employees; (3) amended the complaint for violation of the federal securities laws twice to include evidence developed through an exhaustive investigation; (4) thoroughly researched the law pertinent to the claims and defenses asserted; (5) successfully opposed motions to dismiss filed by each of the three defendants; (6) reviewed millions of pages of documents produced during discovery; (7) assessed the

---

[1] All capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation. Dkt. # 85 at ¶¶1.1-1.23.

[2] "Class" means all Persons who purchased or otherwise acquired Northwest common stock between April 2, 2007 and December 22, 2011, inclusive. Excluded from the Class are Defendants, members of the families of Defendants, any current or former parent, subsidiary, affiliate, partner, officer, executive or director of Northwest, any entity in which any such excluded party has a controlling interest and the legal representatives, affiliates, heirs, successors, or assigns of any such excluded Person. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

[3] For a more detailed history of the Litigation and the factors bearing on the reasonableness of the settlement, the Plan of Allocation of settlement proceeds and an award of attorneys' fees and expenses, the Court is respectfully referred to the accompanying Declaration of Christopher M. Wood in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and Application for an Award of Attorneys' Fees and Expenses and Lead Plaintiff's Expenses ("Wood Decl.").

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 1 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

risks of prevailing on their claims at the summary judgment stage and at trial, including retaining an expert to assess complex damages questions relating to the omissions and disclosures alleged in the Complaint; (8) prepared for and attended two separate mediation sessions; and (9) engaged in arm's-length negotiations with Defendants to settle the Litigation. *See* Wood Decl., ¶6.

The Settlement avoids the risks and uncertainties presented by summary judgment and trial, as well as the time and expense associated with continued fact discovery and impending expert discovery. This Litigation focused on numerous complex accounting issues, including whether Defendants knowingly or recklessly violated Generally Accepted Accounting Principles ("GAAP"). For example, Lead Plaintiff alleged that Defendants improperly accelerated the recognition of revenue throughout the Class Period, which in turn materially inflated Northwest's income and revenue by several million dollars. *See* Wood Decl., ¶23. As a result of Defendants' alleged improper accounting techniques, Northwest issued complex financial restatements. At summary judgment or trial, the parties were sure to rely heavily on the testimony of experts to explain the complex accounting principles involved, and to support their positions. Such a complex "battle of the experts" is not only expensive, but also presents an increased risk that the Class would receive nothing. This settlement avoids that very possible scenario.

In addition, the settlement was negotiated on both sides by experienced counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses. Lead Counsel, who are well-respected and experienced in prosecuting securities class actions, have concluded that the settlement is a very good result under the circumstances and is in the best interest of the Class. This conclusion is based on all the circumstances present here, including the likelihood of recovering on a larger judgment after trial; the risk, expense, and delay of continued litigation; and past experience in litigating similar actions. Moreover, the Plan of Allocation of settlement proceeds, which was developed with the assistance of Lead Plaintiff's damage expert and tracks Lead Plaintiff's theory of damages, is necessarily fair, reasonable, and adequate.

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 2 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

## I. FACTUAL BACKGROUND

The Court is respectfully referred to the accompanying Wood Declaration for a discussion of, *inter alia*, the factual background and procedural history of the Litigation, the litigation efforts of Lead Plaintiff and Lead Counsel, the significant risks of continued litigation, and the negotiations leading to this settlement.

## II. OVERVIEW OF THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[4] In deciding whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair, adequate, and reasonable."[5] The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience

---

4 The law consistently favors the compromise of disputed class action claims. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

5 *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 3 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

> and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.[6] Accord *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. However, where, as here, a proposed class settlement has been reached after arm's-length negotiation conducted by capable counsel, it is presumptively fair. *See Create-A-Card, Inc. v. Intuit, Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *14 (N.D. Cal. Sept. 22, 2009). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F. 2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original).

In sum, the Court's task is to ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risk factors of litigation. Courts have taken a liberal approach toward approval of class action settlements, recognizing that

---

[6] Citations are omitted and emphasis is added unless otherwise noted.

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 4 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results.

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Strength of Lead Plaintiff's Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement

In determining whether the proposed settlement is fair, reasonable, and adequate, the Court should balance the immediate, certain and substantial benefits afforded to the Class against the risks, expense and delay of continued litigation. *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 U.S. Dist. LEXIS 158577, at *15-*16 (S.D. Cal. Nov. 5, 2012); *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000). In other words,

> "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'"

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Courts in this District recognize the difficulties and challenges faced by private securities litigants. *See In re Cellcyte Genetics Sec. Litig.*, No. C08-0047 RSL, 2009 U.S. Dist. LEXIS 87828 at *9-*10 (W.D. Wash. Sept. 24, 2009). This is even more so today in this post-Private Securities Litigation Reform Act of 1995 ("PSLRA") environment amid defendants' constant attempts to push the envelope and contours of the PSLRA. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007); *see also In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

While Lead Counsel believe that the Litigation has significant merit, they recognize that Lead Plaintiff faced numerous risks and uncertainties and are well aware that many other similar actions have been prosecuted in the belief that they were meritorious, only to lose on dispositive motions, at trial, or on appeal. The settlement recognizes the risks of complex litigation involving difficult legal and factual issues. As discussed herein, the risks of continued litigation when weighed

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 5 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

against the benefits obtained for the Class confirms the reasonableness of the settlement. The settlement is unquestionably better than another distinct possibility – no or little recovery for the Class after years of continued litigation.

**B. The Risks of Proving Liability**

Lead Plaintiff's case centered on allegations that Defendants knowingly or recklessly made false and misleading statements regarding Northwest's financial results. Though Lead Plaintiff believes that its claims against Defendants were strong, there were several risks that Lead Plaintiff would face if the litigation were to continue. For instance, the Complaint alleges at least two improprieties that were not the subject of the Company's restatements and would therefore require significant evidence to prove material falsity: (1) the failure to record expenses related to penalty provisions in contracts; and (2) the failure to record losses on unprofitable contracts. Wood Decl., ¶69. Although Lead Plaintiff believes that it had evidence in support of these allegations, there was no guarantee that the evidence was sufficient to get past summary judgment.

There are also risks to proving scienter. While the Court found that Lead Plaintiff had sufficiently alleged Defendants' scienter, the Court's motion to dismiss order also stated that "[c]ertainly, plaintiffs have not alleged any direct evidence of scienter such as an incriminating statement from either of the individual defendants. Nor are the alleged statements from the anonymous witnesses compelling because, for the most part, the Complaint fails to allege how the witnesses 'would possess the information alleged' and to provide 'adequate corroborating details.'" *Richard v. Northwest Pipe Co.*, No. C9-5724 RBL, 2011 U.S. Dist. LEXIS 96200, at *11 (W.D. Wash. Aug. 26, 2011); Wood Decl., ¶70. While Lead Plaintiff believed that its claims regarding the premature recognition of revenue on purchased steel were very strong, this was but 1 of the 14 separate types of accounting improprieties alleged in the Complaint. Wood Decl., ¶70. Further, Defendants vigorously disputed that they acted with scienter, and intended to rely as a defense the fact that two separate independent auditors had repeatedly certified the Company's financial results for years without objecting to the accounting methods used by defendants. *Id.*

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 6 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

Even if Lead Plaintiff got past the summary judgment stage, Lead Counsel recognize the significant risks and expense necessary to prosecute Lead Plaintiff's claims against Defendants through trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. As a result of the significant time between the relevant events (as early as 2006) and any deposition or trial, the ability, as well as the willingness, of many witnesses to testify competently about those events would be impaired and many of the documents Lead Plaintiff would seek to be produced could either be lost or otherwise unavailable for production. Lead Counsel are also mindful of the many problems of proof under and possible defenses to the securities law violations alleged. Moreover, the risks of establishing liability posed by complex accounting issues with conflicting testimony and evidence would be exacerbated by the risks inherent in all shareholder litigation, including the unpredictability of a lengthy and complex jury trial, the risk that witnesses could be unavailable or jurors could react to the evidence in unforeseen ways, the risk that a jury would find that some or all of the alleged misrepresentations were not material, and the risk that the jury could find that Defendants believed in the appropriateness of their actions at the time.

### C. The Risks of Proving Damages

Even if Lead Plaintiff was to overcome the significant risks of proving liability, it would still face the risks of proving loss causation and damages. The issue of loss causation would be a matter of significant dispute even after the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Indeed, very recently, the Court of Appeals for the Eleventh Circuit affirmed a Florida District Court's order vacating a jury verdict in favor of plaintiffs finding that plaintiffs had failed to prove what portion of the decline of the BankAtlantic stock price was due to alleged fraud, as opposed to non-fraud related factors. *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 729 (11th Cir. 2012).

Here, Defendants would continue to argue that the disclosures made by Northwest on which Lead Plaintiff based its theory of loss causation and damages were unrelated to the alleged fraud. For example, Defendants contend the 10.9% stock price drop on March 30, 2010 did not cause any

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD
PLAINTIFF'S MTN FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION OF
SETTLEMENT PROCEEDS (3:09-cv-05724-RBL)   - 7 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

damages because the stock price decline occurred before Northwest announced Dunham's resignation. In its motion to dismiss order, this Court agreed Lead Plaintiff did not adequately allege causation for this stock price decline. If Lead Plaintiff was unable to prove causation and damages related to this stock price decline, total damages declined by approximately $12-$15 million.

While Lead Plaintiff believes that all the disclosures made by Northwest are related to the alleged fraud, a jury might find otherwise and award a mere fraction of the damages Lead Plaintiff seeks, or, none at all. In addition, some courts have questioned the validity of, and precluded, a plaintiffs' expert from using a particular trading model to calculate aggregate damages suffered by the class. *See, e.g., Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627 (N.D. Ill. Sept. 21, 2000). Although Lead Counsel believe that they would be able to provide convincing expert testimony as to causation and damages, and establish substantial damages at trial, in a "battle of the experts," a jury might disagree with Lead Plaintiff's experts. *See, e.g., Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (noting that jury is tasked with weighing and resolving conflicting expert testimony). Even if successful in litigating the case through summary judgment and trial, there was the risk of non-payment because of the company's future condition and insufficient directors' and officers' insurance.

Considering the time value of money and the significant expense of continuing this Litigation through trial and likely appeals, the $12,500,000 settlement represents a highly favorable result for the Class. The settlement is unquestionably better than another distinct possibility – no recovery.

### D. The Recommendations of Experienced Counsel Heavily Favor Approval of the Settlement

In assessing the terms of a proposed settlement, the judgment of experienced counsel is entitled to great weight. Lead Counsel are well known for their experience and success in litigating class actions. Courts recognize that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this Litigation is fully warranted because the settlement is the product of arm's-length negotiations, conducted by capable counsel who are well experienced in

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD
PLAINTIFF'S MTN FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION OF
SETTLEMENT PROCEEDS (3:09-cv-05724-RBL)    - 8 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

complex litigation. *M. Berenson Co. v. Faneuil Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Manual for Complex Litigation* §30.42 (3d ed. 1995). The settlement was reached after two mediation sessions, and the settlement is based on the parties acceptance of the mediator's proposal. Wood Decl., ¶¶77-79.

After thoroughly evaluating the facts and circumstances of this case and balancing the expense, delay, and risk of continuing litigation against the terms of the settlement, counsel believe the settlement is a highly favorable resolution of this Litigation and clearly in the best interest of the Class.

### E. The Parties Have Engaged in Sufficient Pretrial Discovery and Proceedings to Identify the Strengths and Weaknesses of Their Cases

"'[T]he stage of the proceedings and the amount of discovery completed'" is another factor which the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Weinberger*, 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.[7] Lead Counsel conducted significant informal and formal discovery and investigation on the matters alleged. Pursuant to Lead Counsel's subpoenas to third parties and document requests and interrogatories propounded to Defendants, over 3.27 million pages of documents were produced and analyzed. *See* Wood Decl., ¶¶51-56. Lead Counsel also conducted an extensive pre- and post-filing investigation of the facts, which included the identification and interviews of numerous witnesses who provided information pertaining to Lead Plaintiff's claims, as well as consultation with in-house and outside experts. The parties also participated in two mediation sessions with Judge Infante and conducted extensive settlement

---

[7] The Ninth Circuit held that "'in the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" *Mego Fin.*, 213 F.3d at 459.

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 9 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

negotiations, where the strengths and weaknesses of the parties' respective claims and defenses were thoroughly explored. *See* Wood Decl., ¶¶77-79. The parties also had the benefit of the Court's order on Defendants' motions to dismiss. Thus, the parties reached an agreement to settle this Litigation at a point when they had an adequate understanding of the legal and factual issues surrounding the case. *See Mego Fin.*, 213 F.3d at 459. Therefore, sufficient information was before the parties and their counsel to permit them to carefully consider the appropriateness of the settlement under the circumstances here.

### F. Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Trial Favors Settlement

The immediacy and certainty of a recovery is a factor for this Court to balance in determining whether this proposed settlement is fair, adequate, and reasonable. *See e.g.*, *Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp. at 616-17; *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979). Therefore, the settlement must be balanced against the expense and delay in achieving a larger result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). The securities claims advanced by Lead Plaintiff involve complex legal and factual issues, which would require document discovery, numerous depositions, and expert discovery and testimony. After completion of discovery, Defendants' expected motions for summary judgment would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued. The risk of Lead Plaintiff's experts being excluded as a result of Defendant's expected *Daubert* motions was also a possibility. Thus, substantial time and expense would need to be expended in preparing the case for trial. The trial itself would be long, expensive, and uncertain and no matter the outcome, appeals would be virtually assured. This would add considerably to the expense and duration of the Litigation.

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 10 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

Settlement at this juncture results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of trial and post-trial litigation. As the Ninth Circuit has made clear, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.

**G. The Plan of Allocation Is Fair and Reasonable**

Lead Plaintiff also seeks approval of the Plan of Allocation of the settlement proceeds. The Plan of Allocation is set forth in the Notice mailed to potential Class Members. Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *See Ikon*, 194 F.R.D. at 184; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members. Here, the Plan of Allocation was developed by Lead Counsel with the assistance of their damage expert and reflects an assessment of the damages that could have been recovered at trial under the theories asserted in the case by Lead Plaintiff. The Plan of Allocation will result in a fair distribution of the available proceeds among those Class Members who submit valid claims and therefore should be approved.

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 11 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

## IV. CONCLUSION

For all the reasons discussed herein, Lead Plaintiff respectfully requests that this Court approve the settlement of this Litigation and the Plan of Allocation of settlement proceeds as fair, reasonable, and adequate.

DATED: January 11, 2013

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER P. SEEFER
CHRISTOPHER M. WOOD

s/ Christopher P. Seefer
CHRISTOPHER P. SEEFER

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
Email: cseefer@rgrdlaw.com
Email: cwood@rgrdlaw.com

Lead Counsel for Plaintiff

HAGENS BERMAN SOBOL SHAPIRO LLP
KARL P. BARTH, WSBA No. 22780
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: 206/623-7292
206/623-0594 (fax)
Email: karlb@hbsslaw.com

Liaison Counsel

SUGARMAN & SUSSKIND
HOWARD S. SUSSKIND
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: 305/529-2801
305/447-8115 (fax)

Additional Counsel for Plaintiff

798791_1

MTN & MEM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MTN FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS (3:09-cv-05724-RBL) - 12 -

ROBBINS GELLER RUDMAN & DOWD LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Telephone: 415/288-4545 • Fax: 415/288-4534

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 11, 2013.

s/ Christopher P. Seefer
CHRISTOPHER P. SEEFER

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: chriss@rgrdlaw.com

# Mailing Information for a Case 3:09-cv-05724-RBL

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Inessa Baram-Blackwell**
  ibaramblackwell@wsgr.com,rcarter@wsgr.com

- **Karl Phillip Barth**
  Carrie@hbsslaw.com,karlb@hbsslaw.com

- **Douglas J Clark**
  dclark@wsgr.com,ktrevisan@wsgr.com

- **Larry Steven Gangnes**
  gangnesl@lanepowell.com,intlekofert@lanepowell.com,docketing-sea@lanepowell.com,donnellyjossm@lanepowell.com

- **Barry M Kaplan**
  bkaplan@wsgr.com,plane@wsgr.com,rcarter@wsgr.com

- **Cody R. LeJeune**
  clejeune@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **George H Mernick , III**
  ghmernick@hhlaw.com

- **Keith F Park**
  keithp@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@csgrr.com

- **Ignacio E Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com

- **Christopher P Seefer**
  chriss@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Tanya Durkee Urbach**
  urbacht@lanepowell.com,pinkleyl@lanepowell.com

- **Robin Wechkin**
  robin.wechkin@hoganlovells.com,ky-yen.wong@hoganlovells.com

- **Erin M. Wilson**
  wilsonem@lanepowell.com,Docketing-SEA@lanepowell.com,wileyj@lanepowell.com

14

- **Christopher M Wood**
  cwood@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

15